# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

**January 2013 Term**

**FILED**

**June 5, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 12-0435

**ANDREA H.,**
**Respondent Below, Petitioner**

**V.**

**JASON R. C.,**
**Petitioner Below, Respondent**

---

**Appeal from the Circuit Court of Jefferson County**
**Honorable David H. Sanders, Judge**
**Civil Action No. 10-FS-58**

**REVERSED AND REMANDED**

---

**Submitted: May 15, 2013**
**Filed: June 5, 2013**

Cinda L. Scales                               Joanna L.S Robinson
Martinsburg, West Virginia          Trump & Trump, LC
Attorney for the Petitioner            Martinsburg, West Virginia
                                                    Attorney for the Respondent

The Opinion of the Court was delivered PER CURIAM.

**SYLLABUS BY THE COURT**

1.      "In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*."  Syllabus, *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004).

2.      "West Virginia Code § 48-9-401(a) (2009) permits a court to modify a parenting plan order on the basis of a substantial change in circumstance that arises after the parenting plan order is entered if such change was not provided for in the parenting plan and modification is necessary to serve the best interests of the child."  Syllabus point 3, *Skidmore v. Rogers*, 229 W. Va. 13, 725 S.E.2d 182 (2011).

3.      "To justify a change of child custody, in addition to a change in circumstances of the parties, it must be shown that such change would materially promote the welfare of the child."  Syllabus point 2, *Cloud v. Cloud*, 161 W. Va. 45, 239 S.E.2d 669 (1977).

**Per Curiam:**

1

The respondent below and petitioner herein, Andrea H.[1] (hereinafter "mother"), appeals from an order entered March 1, 2012, by the Circuit Court of Jefferson County. By that order, the circuit court denied the mother's petition for appeal and upheld the family court's November 22, 2011, order, which modified primary custody of the children. The mother argues that she is a fit primary caretaker; thus, she contends that the lower courts erred in modifying the parties' prior custodial arrangement and awarding primary custody to the petitioner below and respondent herein, Jason R. C. (hereinafter "father"). Based on the parties' briefs,[2] the appendix record designated for our consideration, and the pertinent authorities, we reverse the rulings made by the lower courts and remand this case for entry of an appropriate order.

## I.

## FACTUAL AND PROCEDURAL HISTORY

At the heart of this case is the custodial allocation of the parties' two minor children: T.C., a son, and M.C., a daughter.[3] The children were ten and six years of age, respectively, at the time of the lower court proceedings. Until 2007, the siblings lived with

---

[1]"We follow our past practice in juvenile and domestic relations cases which involve sensitive facts and do not utilize the last names of the parties." *State ex rel. W. Va. Dep't of Human Servs. v. Cheryl M.,* 177 W. Va. 688, 689 n.1, 356 S.E.2d 181, 182 n.1 (1987) (citations omitted).

[2]The case was not argued orally before this Court. Rather, it was submitted on briefs, along with portions of the underlying record that were designated for our review.

[3]T.C. was born in 2001; and M.C.'s date of birth is in 2005.

their mother and father in the State of Colorado.[4]  At that time, the mother and father divorced and the mother was awarded primary custody of the minor children subject to visitation by the father.  Both parties testified that they had deviated from the Colorado visitation schedule to allow the father to have additional time with the children.

In December 2009, the father moved to the State of Virginia and worked in the Washington, D.C., area as a member of the Armed Forces.  The children remained with their mother in Colorado.  Thereafter, in June 2010, the mother moved with the children to Jefferson County, West Virginia.  The family court found that the mother's relocation was "for the primary purpose of having the children have more contact with [their father]. . . . [The mother] desired that the children have a more meaningful relationship with [their father] than they would have been able to experience if they had continued to reside across the country from him in Colorado."[5]

---

[4]From the record, it appears that, even when the family lived together, there were times when the father was away from home for extended periods of time due to his work.

[5]The family court pointed out that this is the most difficult case it has had occasion to review.  The lower court commented that the father's behavior was arrogant and self-centered.  While juxtaposing the father's attitude with the mother's concern for her children, as evidenced by the fact that she moved across the country to allow the father to have additional involvement in his children's lives, the family court also acknowledged that the relationship between the mother and T.C. was strained, resulting in T.C. receiving counseling for his anger issues.  However, the record reveals that some of the son's anger towards the mother may have been due to the father's comments to the son suggesting that the mother was to blame for the son's inability to play local sports.

3

While the mother was securing new employment and a residence, she allowed the children to remain with their father[6] from the end of May until mid-August 2010. When the mother finished the transition of relocating her home and employment to West Virginia, she planned to retrieve the children from their father. Preemptively, on August 5, 2010, the father filed an Emergency Motion to Modify Custody in Virginia, which was dismissed for lack of jurisdiction. Subsequent thereto, the father filed the current action in West Virginia as a Motion for Modification and Expedited Hearing. The parties have agreed that jurisdiction is proper in West Virginia.

On May 5, 2011, the family court entered an order appointing a psychologist, Dr. Krieg, to perform a custody evaluation. The minor son already had been seeing a counselor, Dr. Shade, and both experts offered their opinions at the hearing held August 24, 2011, before the family court. The experts both declared that it is in the children's best interests for the father to have primary custodial responsibility even though they admitted that both parties are fit parents. Both experts' opinions were based, in part, on T.C.'s

---

[6]The father had remarried and was living with his new wife and her teenaged daughter. The stepmother does not work outside of the home and provides much of the childcare for the minor children when they are under their father's care. There is no dispute that the children have an excellent relationship with their stepmother. Conversely, the mother works during the weekdays, which requires that the children receive short periods of childcare before school and for approximately one hour after school.

4

preference to live with his father.[7]  The expert witnesses testified that the son believes it is in his best interests to have the lifestyle that can be provided in the father's home, and that, as a single parent, his mother cannot provide the structure that he desires.  The lower court found that the children view life with their mother as "stressful and chaotic" and life with their father as "more predictable."  Six-year-old, M.C., met with Dr. Krieg, and she also expressed a desire to reside with her father, though her request appears to have been motivated by the fact that she wanted to live with her older brother.

According to the lower court order, both Dr. Krieg and Dr. Shade stated that "life was more predictable for the children in the home of the [father] because he has a wife present to take care of the children."  To that end, the family court recognized in its order that "Dr. Krieg said that he would not recommend the change of custody to have the children reside primarily with the [father] if it were not for the step-mother being home to care for the children[,]" and that "the step-mother is responsible for providing for the needs of the family."  Conversely, the family court found that the mother "is a single parent and must stretch her activities to include covering her work schedule, home activities, the children's activities, school, homework, house cleaning, cooking, etc."  While the family court found that it "is unfair to punish the [mother] for being a working parent and not being able to provide the luxury of home cooked meals[,]" it also found that the father was not faced with

---

[7]T.C. was ten years old at the time.  However, all parties conceded that he was mature for his young age.

5

similar time constraints because his new wife stayed home and took care of the chores for him.

Based on its determination that both children made mature preferences to live with their father, the family court entered its Final Custodial Allocation Order on November 22, 2011, awarding primary custodial responsibility to the father, with the mother being awarded visitation. During the school year, the mother would have two out of three weekends per month, with additional visitation every Wednesday evening. The children were ordered to reside with the mother during the summer, with the father exercising alternating weekends and Wednesday evening visits.

The mother appealed the family court's order to the Circuit Court of Jefferson County to challenge the legal conclusions and applications made by the family court regarding custodial allocation. The factual findings were not challenged. While recognizing the mother's argument that the family court never made a finding of a substantial change in circumstances that would warrant a modification, the circuit court found that the failure by the family court to make such a finding was not fatal because the reasons for the family court's findings were implicit in its order. However, the circuit court agreed with the mother that "the record contains evidence of a number of factors which suggest that the child[ren]'s welfare will not be significantly improved by a change in custody." Specifically, the circuit court pointed out that the father was self-centered; meanwhile, "the mother has sacrificed a

6

lot by moving from Colorado to facilitate meaningful visitation with the father and acting in the best interests of the children[.]" The circuit court also found it troubling that the lower court improperly heard testimony regarding the stepmother's ability to provide childcare versus the outside childcare that the mother had to use so that she could work outside of the home. Despite these concerns, the circuit court determined that the family court considered the relevant factors and, further, that it did not abuse its discretion. The Order Denying the Petition for Appeal was entered by the circuit court on March 1, 2012. This appeal followed.

## II.

## STANDARD OF REVIEW

Generally,

> [i]n reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

Syl., *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004). Specific to the custody issues before this Court, in considering the proper placement for children, we are reminded that "[q]uestions relating to . . . custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused." Syl., in part, *Nichols v. Nichols,* 160 W. Va. 514, 236 S.E.2d 36 (1977). Further, "[i]n . . . custody matters, we have traditionally

7

held paramount the best interests of the child." Syl. pt. 5, in part, *Carter v. Carter*, 196 W. Va. 239, 470 S.E.2d 193 (1996). Mindful of these principles, we will consider the substantive issues raised herein.

## III.

## DISCUSSION

On appeal to this Court, the mother asserts three assignments of error: (1) the lower court erred in modifying custody based, in large part, on the fact that the father's new wife is a stay-at-home mom who could provide childcare; (2) the lower court erred in considering the preferences of the two young children, aged ten and six; and (3) the lower court erred in modifying custody against the best interests of the children. Generally, the mother asserts that the father failed to meet his burden to show a change in circumstances warranting modification of custody. Further, as argued by the mother, there was no showing that the custody change would materially benefit the children. In response, the father contends that the lower courts properly recognized a substantial change in circumstances, primarily the expressed preferences of the parties' children and the mother's relocation from Colorado to West Virginia. Moreover, the father states that the lower courts properly decided that a modification of custodial allocation would promote the best interests of the parties' children.

In reviewing the underlying courts' decisions that child custody should be

modified, we are mindful that a parenting plan order may only be modified under certain circumstances, which are set forth in W. Va. Code §§ 48-9-401 (2001) through 404 (2001). While no specific code section is delineated by the parties, the court documents, including the initial Petition for Modification, demonstrate that the current modification request was based upon allegations of changed circumstances and the best interests of the children.[8] Thus, the current modification request is governed by W. Va. Code § 48-9-401 (2001) (Repl. Vol. 2009).[9]

---

[8]The father's request for modification, based upon his asserted facts, did not invoke W. Va. Code § 48-9-402 through 404. Section 402 provides for modification without a showing of changed circumstances, section 403 provides for modification upon the relocation of a parent, and section 404 provides for modification due to a parent's military service. *See generally Skidmore v. Rogers*, 229 W. Va. 13, 725 S.E.2d 182 (2011). While section 403 specifically applies in cases of parental relocation, it sets forth that "relocation of a parent constitutes a substantial change in the circumstances under subsection 9-401(a) of the child only when it significantly impairs either parent's ability to exercise responsibilities that the parent has been exercising." In the present case, the mother's relocation did not impair the father's ability to exercise his visitation rights. In fact, the mother's relocation made the father's visitation feasible. Thus, the relocation by the mother did not constitute a substantial change in circumstances under W. Va. Code § 48-9-401(a). Further, the father's relocation in 2009 was never the impetus of a petition for modification.

[9]W. Va. Code § 48-9-401 (2001) (Repl. Vol. 2009) provides, in full, as follows:

(a) Except as provided in section 9-402 or 9-403, a court shall modify a parenting plan order if it finds, on the basis of facts that were not known or have arisen since the entry of the prior order and were not anticipated therein, that a substantial change has occurred in the circumstances of the child or of one or both parents and a modification is necessary to serve the best interests of the child.

(b) In exceptional circumstances, a court may modify a

(continued...)

9

This Court previously has had occasion to review this statute, at which time we held that

> West Virginia Code § 48-9-401(a) (2009) permits a court to modify a parenting plan order on the basis of a substantial change in circumstance that arises after the parenting plan order is entered if such change was not provided for in the parenting plan and modification is necessary to serve the best interests of the child.

[9](...continued)
parenting plan if it finds that the plan is not working as contemplated and in some specific way is manifestly harmful to the child, even if a substantial change of circumstances has not occurred.

(c) Unless the parents have agreed otherwise, the following circumstances do not justify a significant modification of a parenting plan except where harm to the child is shown:

> (1) Circumstances resulting in an involuntary loss of income, by loss of employment or otherwise, affecting the parent's economic status;

> (2) A parent's remarriage or cohabitation; and

> (3) Choice of reasonable caretaking arrangements for the child by a legal parent, including the child's placement in day care.

(d) For purposes of subsection (a) of this section, the occurrence or worsening of a limiting factor, as defined in subsection (a), section 9-209, after a parenting plan has been ordered by the court, constitutes a substantial change of circumstances and measures shall be ordered pursuant to section 9-209 to protect the child or the child's parent.

Syl. pt. 3, *Skidmore v. Rogers*, 229 W. Va. 13, 725 S.E.2d 182 (2011). Thus, the applicable code provision in the case *sub judice* requires two components for a successful request for modification of child custody: (1) a substantial change in circumstance, *and* (2) modification must be in the best interests of the children.[10] *See* Syl. pt. 2, *Cloud v. Cloud*, 161 W. Va. 45, 239 S.E.2d 669 (1977) ("To justify a change of child custody, in addition to a change in circumstances of the parties, it must be shown that such change would materially promote the welfare of the child.").

The lower courts' decisions that there was a substantial change in circumstance relied on the mother's relocation from Colorado to West Virginia, as well as on the stated preference of the children as to their custodial placement. As we previously explained, the mother's relocation did not impair the father's ability to exercise his visitation rights. In fact, the mother's relocation made visitation possible for the father, and was not a substantial change in circumstances under W. Va. Code § 48-9-401(a). *See* note 8, *supra*.

Therefore, we turn to the issue of the preferences asserted by the children to live with their father. T.C., age ten, and M.C., age six, both voiced a desire to live with their

---

[10]Alternatively, if a parenting plan is found to be manifestly harmful, a modification can occur even in the absence of a change in circumstances. *See* W. Va. Code § 48-9-401(b). There is no assertion of manifest harm to the children in the present case. In fact, the experts testified, and the underlying courts found, that both parents were fit caregivers.

11

father.  Because of the children's ages when the petition to modify the parenting plan was filed, W. Va. Code § 48-9-402(b)(3) (2001) (Repl. Vol. 2009), which provides for modification based on "the reasonable and firm preferences of a child who has attained the age of fourteen," does not apply.   Nevertheless, this Court recently has found that a child's significant advancement from the age of four to the age of eleven, which was not provided for in the original parenting plan, can be a substantial change of circumstance on which a modification of the parenting plan order may be based pursuant to W. Va. Code § 48-9-401. *See generally Skidmore*, 229 W. Va. 13, 725 S.E.2d 182.  The *Skidmore* opinion cautions, however, that the

> advance in a child's age will [not] necessarily constitute a basis for a modification of a parenting plan order in all cases. Whether any change in circumstance that was not anticipated in a parenting plan can serve as the basis for a modification is a case specific question, and courts must consider the best interest of the child in each individual case.

*Id.*, 229 W. Va. at __ n.3, 725 S.E.2d at 191 n.3.


It is clear, therefore, that while an advancement in age can be considered a change in circumstance sufficient to warrant a modification of custody, the change in custody also must be in the children's best interests.  Because we find that the change in custody did not serve the best interests of the children, we need not examine whether the advancement in the children's ages nor their stated preferences constituted a change in circumstances.

12

The Legislature has declared "that a child's best interest will be served by assuring that minor children have frequent and continuing contact with parents who have shown the ability to act in the best interest of their children[.]" W. Va. Code § 48-9-101 (2001) (Repl. Vol. 2009). Moreover, a child's best interests are served by ensuring

(1) Stability of the child;

(2) Parental planning and agreement about the child's custodial arrangements and upbringing;

(3) Continuity of existing parent-child attachments;

(4) Meaningful contact between a child and each parent;

(5) Caretaking relationships by adults who love the child, know how to provide for the child's needs, and who place a high priority on doing so;

(6) Security from exposure to physical or emotional harm; and

(7) Expeditious, predictable decision-making and avoidance of prolonged uncertainty respecting arrangements for the child's care and control.

W. Va. Code § 48-9-102 (2001) (Repl. Vol. 2009). In determining the children's best interests, the child's preferences should be considered.[11]

---

[11]*See Skidmore*, 229 W. Va. at __ n.5, 725 S.E.2d at 191 n.5 explaining that the child's

> preferences should be considered in determining whether a modification based on a substantial change in circumstance is in his best interest. This Court has previously recognized that a child's preferences with regard to custody matters should be considered when that child's age and maturity level so warrants,
>
> (continued...)

In the present case, T.C. and M.C. both expressed a desire to live with their father. M.C.'s reasons were based primarily on the desire to live wherever her older brother lived. T.C. had been showing some anger issues towards his mother, for which he was receiving counseling. This Court is concerned, however, because there is evidence in the record suggesting that T.C.'s anger towards his mother was exacerbated by the father. For example, the father would enroll T.C. in weekend sports programs and then, when it was the mother's turn to exercise visitation, the father would comment that the mother was preventing T.C. from being able to participate in the sports activities. The expert witnesses testified that the son believes it is in his best interests to have the lifestyle that can be provided in the father's home and that, as a single parent, his mother cannot provide the structure that he desires. The lower court found that the children view life with their mother as "stressful and chaotic" and life with their father as "more predictable."

---

[11](...continued)
even if the child has not yet reached the age of fourteen. *See State ex rel. Jeanne U. v. Canady*, 210 W. Va. 88, 96-97, 554 S.E.2d 121, 129-30 (2001) ("While [the child] is not yet fourteen years of age, his age and maturity level should be considered, and his desires concerning visitation with his biological father must be examined."). In this case, the guardian ad litem's report represents that [T.C.] is "bright," "articulate" and "mature for his age," and that he expressed a clear desire to spend more time with his father. Under these circumstances, [the child's] clearly expressed preference should be among the factors considered in determining whether a modification is in his best interest.

Significantly, a large part of the underlying decision seems to be based on an improper analysis of the effect of the stepmother's involvement in the children's lives when they are at their father's home and the fact that the mother must use outside childcare when she has the children. While the family court found that it "is unfair to punish the [mother] for being a working parent and not being able to provide the luxury of home cooked meals[,]" it also found that the father was not faced with similar time constraints because his new wife stayed home and took care of the chores for him. "Dr. Krieg said that he would not recommend the change of custody to have the children reside primarily with the [father] if it were not for the step-mother being home to care for the children[ ]" and that "the step-mother is responsible for providing for the needs of the family."

We note that W. Va. Code § 48-9-101(c) expressly states that "the following circumstances do **not** justify a significant modification of a parenting plan . . . . (2) A parent's remarriage or cohabitation; and (3) Choice of reasonable caretaking arrangements for the child by a legal parent, including the child's placement in day care." (Emphasis added). In reality, the modification of custody did not further the relationship between the children and their father. Rather, it enhanced the relationship between the children and their stepmother, while also damaging the relationship they have with their biological mother. The considerations of the stepmother's ability to provide childcare and the mother's need for outside childcare were improper components of a custody arrangement to be considered by the lower courts.

15

Moreover, the evidence shows that the best interests of the children are best served by continuing their custody relationship with their mother. The lower court found that the father's behavior was arrogant and self-centered and that his refusal to relocate was not in the children's best interests.[12] Meanwhile, the mother's concern for her children was evidenced by the fact that she moved across the country to allow the father to have additional involvement in his children's lives, and was in the best interests of her children. Significantly, the lower courts found that the mother is a fit parent, and the circuit court's order specifically stated that "the record contains evidence of a number of factors which suggest that the child[ren]'s welfare will not be significantly improved by a change in custody."

Because the father was unable to prove a substantial change in circumstances under W. Va. Code § 48-9-401 and, further, because the best interests of the children are served by maintaining primary custodial responsibility with their mother, the lower courts erred in modifying custody and awarding primary custodial responsibility to the father.

---

[12]The mother's relocation to West Virginia brought the households in closer proximity and the lower courts suggested that the father move from Virginia to West Virginia to facilitate visitation. This recommendation was based on the fact that the father commuted to work, and his travel time would remain consistent even after such a move. However, the father was unwilling to move.

16

## IV.

## CONCLUSION

For the foregoing reasons, the Circuit Court of Jefferson County's order of March 1, 2012, which denied the mother's petition for appeal and upheld the family court's November 22, 2011, order, is reversed. Further, this case is remanded for entry of an order reversing the family court's order that granted the father's Motion for Modification.

Reversed and Remanded.

17