# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Brian L.,**
**Respondent Below, Petitioner**

**vs)  No. 18-0752**  (Cabell County 13-D-886)

**Heather E.,**
**Petitioner Below, Respondent**

**FILED**

**September 9, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Brian L., pro se, appeals the Circuit Court of Cabell County's July 17, 2018, order that affirmed a family court order denying his request for modification of an order directing that he have no contact with his child. Respondent Heather E., by counsel Arik C. Paraschos and Noel M. Olivero, filed a response in support of the circuit court's order. Petitioner submitted a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner Brian L. ("Father") and Respondent Heather E. ("Mother") are the parents of C.L., who was born on February 10, 2012, in Virginia. The couple never married and ceased living together on a consistent basis shortly after the child's birth. Father moved to Texas and Mother and child to Kentucky and, eventually, to West Virginia where Mother married.

A custody battle immediately ensued, resulting in a complicated procedural history that is set forth in detail in *Brian L. v. Heather E.*, No. 14-1155, 2015 WL 6955142 (W.Va. Nov. 6, 2015) (memorandum decision). For purposes of this appeal, the following facts related to those proceedings are relevant: On January 8, 2013, Mother filed a temporary emergency protective order against Father in the Magistrate Court of Cabell County after Father took the child to Texas without her consent.[1] Also in January of 2013, Mother filed a custody petition in Virginia, where

---

[1] In Brian L. v. Heather E., No. 14-1155, 2015 WL 6955142 (W.Va. Nov. 6, 2015) (memorandum decision), we described this incident as follows:

1

the child was born, and, ultimately, the couple entered into an order there in which they agreed to joint (50/50) legal and physical custody of the child. On June 17, 2013, Father moved to dismiss the temporary emergency protective order in Cabell County and remand the case to Texas on the issue of custody, to which Mother responded and also sought to register the Virginia custody decree. Following a hearing in the Family Court of Cabell County, Father filed, in Texas, a petition to modify the agreed final order that was entered in Virginia and for a temporary restraining order ("TRO") against Mother. The TRO was granted. In response, Mother filed an emergency ex parte petition in Cabell County to grant her full custody of the child until the jurisdictional matters were resolved. The family court granted Mother's emergency petition because, among other things, Father instituted a judicial proceeding in Texas while a pending case under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") was ongoing in West Virginia. According to the family court, Father failed to inform the Texas court of the same, and, in so doing, Father abused the judicial process in Texas. Ultimately, the family court determined that West Virginia met the requirements to assume jurisdiction under the UCCJEA. The circuit court affirmed this decision.

Thereafter, following a hearing on the previously entered emergency ex parte order that granted Mother full custody, and also on Mother's petition for child support and for attorney's fees, the family court entered an order on July 29, 2014, that, relevant to this appeal, ordered that the ex parte order shall remain in full force and effect and that Father have no contact with the child while the outstanding action in Texas continues "since he is a flight risk with the child." Father was also ordered to pay Mother child support and $11,000.00 in attorney's fees. Father appealed this order to the circuit court, which affirmed. Father thereafter appealed the circuit court's order, as well as the prior order regarding jurisdiction, to this Court. This Court affirmed both orders. *See Brian L.,* 2015 WL 6955142.

<u>The present case</u>

On January 17, 2018, Father filed a petition for modification of the July 29, 2014, order that ordered that he have no contact with the child. Father averred that he "surrendered his [Texas]

---

The parties arranged a meeting on December 30, 2012, at a hotel in Barboursville, West Virginia, as Father and his grandmother were traveling back to Texas from Ohio after the holidays. The Family Court of Cabell County found that, although Father wished to take [the child] with him to Texas for an extended stay, Mother would not agree; rather, Mother offered to let Father visit with [the child] at the hotel for about an hour. Mother left the hotel at approximately 11:00 p.m., at which time Father and his grandmother departed the hotel and took the child to Texas. Although Father contends that he took [the child] to Texas with Mother's permission, Mother disagrees; furthermore, Father's grandmother testified that when Mother left the hotel, Mother told them that she would be back in an hour to get [the child]. Father refused to return [the child] to Mother.

*Id.* at *1 (footnote omitted).

2

residence indefinitely[,]" that the Texas case has been dismissed,[2] and that "[t]his was done to satisfy the respondent[']s counsel who implied that a Texas case made the father a 'flight risk.'" Father also averred that he had moved to West Virginia where he enrolled his older child in school. Father "ask[ed] the court for a reinstatement of shared parenting, so the child can be reunited with siblings and extended family."[3]

On March 7, 2018, Mother filed a motion to dismiss the petition for modification. She argued that Father, who had previously been ordered to pay $11,000.00 in attorney's fees, had paid only $305.00 of that amount and that this matter should not be permitted to proceed further until Father has paid all outstanding attorney's fees. Mother requested that Father be held in contempt for failure to pay. She further argued that the petition for modification failed to allege any change of circumstance. Mother objected to any request for parenting time, stating that the child has had no contact with Father for four years and that Father "is essentially a stranger to him. . . . [Father] will remain a flight risk as it is obvious from his filing that he has taken no responsibility for his prior bad conduct."[4]

A hearing on Father's petition for modification was conducted in family court on March 29, 2018. In an order entered on April 4, 2018, the court dismissed the petition, finding that, although Father "demonstrated a possible change of circumstances [i.e., moving from Texas to West Virginia,] [he] provided no evidence [that] a modification of the current no contact [o]rder is in the child's best interest or promotes the child's best interest." Further, the family court found that Father claims to be a resident of West Virginia but "he still maintains a driver's license in another state, he listed Texas as his contact address for all of his documentation with the [c]ourt and otherwise his testimony on his residency was muddled at best." Although Father testified that he relocated to West Virginia to be near the child, he also testified that he became homeless following a 2017 hurricane in Texas, that he lived "in the Tri-State area in a hotel for a couple of months in late 2017[,]" entered into a six-month lease in West Virginia in 2018, and "does not know if he will be able to maintain that lease after June 2018." The court determined that Father "had not had contact with his son for several years and that he had a right to bring a petition [for

---

[2] The Texas case was dismissed in November of 2015. Father explained that he delayed seeking a modification of the "no contact" order because he was not in a favorable financial position to do so given the costs associated with traveling to and from West Virginia. Father testified that he lost his home and all of his belongings, including his vehicle, as a result of a 2017 hurricane.

[3] Father has full custody of a son by a prior relationship and shared custody of a daughter who resides in Texas. He has a large extended family, photos of whom he presented to the family court in support of his argument that the child at issue should be permitted to have a relationship with them.

[4] In his petition for modification, Father reiterated his argument that the evidence did not support a finding that he fled from West Virginia to Texas with the child without Mother's consent and that jurisdiction in the Family Court of Cabell County was improper.

modification] at a much earlier date after the dismissal of his Texas case. [Father] cho[se] not to do so and this passage of time and reintroduction into the child's life is a significant event that needs to be taken into consideration." Finally, the family court found that Father was previously found to be a "flight risk" and that "[h]e provided no convincing evidence . . . that he was no longer a flight risk."[5]

Father appealed the family court's order to the Circuit Court of Cabell County, which affirmed by order entered on July 17, 2018. This appeal followed.

We review the circuit court's order under the following standard:

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous, standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo.*

Syllabus, *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004).

In order to modify the "no contact" provision that is currently in place, Father was required to show that there was a substantial change in circumstances *and* that modification is in the best interest of the child. *See Andrea H. v. Jason R.C.*, 231 W. Va. 313, 318, 745 S.E.2d 204, 209 (2013). In Syllabus Point 3 of *Skidmore v. Rogers*, 229 W. Va. 13, 725 S.E.2d 182 (2011), we held that

> West Virginia Code § 48-9-401(a) (2009)[6] permits a court to modify a parenting plan order on the basis of a substantial change in circumstance that arises after the parenting plan order is entered if such change was not provided for in the parenting plan and modification is necessary to serve the best interests of the child.

(Footnote added). In his first assignment of error, Father argues that the family court erred in concluding that he failed to produce evidence that a modification of the "no contact" order is in

---

[5] The family court also concluded that Father is in contempt for failing to pay the previously ordered attorney's fees and ordered that he begin to make regular payments in satisfaction of that order.

[6] West Virginia Code § 48-9-401(a) provides as follows:

Except as provided in section 9-402 [§ 48-9-402] or 9-403 [§ 48-9-403], a court shall modify a parenting plan order if it finds, on the basis of facts that were not known or have arisen since the entry of the prior order and were not anticipated therein, that a substantial change has occurred in the circumstances of the child or of one or both parents and a modification is necessary to serve the best interests of the child.

the child's best interests. He contends that the court failed to consider the factors set forth in West Virginia Code § 48-9-102(a), the "primary objective" of which "is to serve the child's best interests . . . ." *Id.* According to West Virginia Code § 48-9-102(a), such interests are served by facilitating the following:

> (1) Stability of the child;
> (2) Parental planning and agreement about the child's custodial arrangements and upbringing;
> (3) Continuity of existing parent-child attachments;
> (4) Meaningful contact between a child and each parent;
> (5) Caretaking relationships by adults who love the child, know how to provide for the child's needs, and who place a high priority on doing so;
> (6) Security from exposure to physical or emotional harm; and
> (7)Expeditious, predictable decision-making and avoidance of prolonged uncertainty respecting arrangements for the child's care and control.

Additionally, Father references West Virginia Code § 48-9-102(b), which provides that "[a] secondary objective of [the] article is to achieve fairness between the parents."

The family court found that Father "demonstrated a *possible* change of circumstances" by relocating to West Virginia. (Emphasis added). Clearly, however, the court was not entirely convinced that Father had permanently moved to West Virginia, finding that "his testimony on his residency was muddled at best" and that "*even if* [Father] is a resident of . . . West Virginia, this does not in itself promote or benefit the welfare of the child. It is however a change of circumstances *if, in fact*, he now lives in West Virginia." (Emphasis added). Nonetheless, during the course of the hearing on the petition for modification, the family court repeatedly instructed Father that he was required to meet "the higher threshold" of presenting evidence that it is in the best interest of the child to modify the "no contact" order. Indeed, this Court has repeatedly held that "'[i]n a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided.' Syl. Pt. 1, *State ex rel. Cash v. Lively,* 155 W.Va. 801, 187 S.E.2d 601 (1972)." Syl. Pt. 3, *In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015). *See also* Syl. Pt. 5, *Carter v. Carter,* 196 W. Va. 239, 470 S.E.2d 193 (1996) ("In visitation as well as custody matters, we have traditionally held paramount the best interests of the child."); *David M. v. Margaret M.,* 182 W. Va. 57, 60, 385 S.E.2d 912, 916 (1989) ("The child's welfare is the paramount and controlling factor in all custody matters." (Citations omitted)).

Though Father now argues that the court failed to consider the "best interest" factors set forth in West Virginia Code § 48-9-102(a), he fails to point to any evidence of record establishing that any of the factors were satisfied. To the contrary, the evidence showed that Father's relocation to West Virginia was tenuous at best. Indeed, at the very least, the evidence that Father continued to maintain a driver's license in Texas, used a Texas address as a contact address for family court purposes in West Virginia, and was uncertain as to whether he would be able to maintain his current West Virginia housing after June of 2018, would be counter to favorable findings of "stability," W. Va. Code § 48-9-102(a)(1), "[c]ontinuity of existing parent-child attachments[,]" W. Va. Code § 48-9-102(a)(3), and "[m]eaningful contact between" Father and the child. W. Va. Code § 48-9-102(a)(4). Based upon the record before us, we thus conclude that the family court

5

did not abuse its discretion in determining that Father failed to prove that modification of the "no contact" order is in the best interest of the child.

Relatedly, Father also argues that the family court erred in finding that the testimony of Father's private investigator was not relevant to Father's request to modify the "no contact" order. Father argues that the investigator, whom Father hired to determine where Mother was residing, testified that he surveilled Mother's residential address of record "over a period of time and checked the activities of the comings and goings . . . and . . . determined that there was no one living there." Father argues that this testimony was relevant "to show the current level of stability of his son. By demonstrating that [Mother] does not live where she has previously told the [c]ourt [sic], [Father] showed that his son was currently in a potentially unstable living environment." Because "stability of the child" is a factor to consider in determining the "best interests of the child," W. Va. Code § 48-9-102(a)(1), Father argues that the investigator's testimony was relevant as to whether Father established a change in circumstances sufficient to warrant a modification of the "no contact" order.

We find no error. Although Father's private investigator testified that he believed Mother did not live at her address of record, Father testified that he had looked into the matter on his own and knew where she was living. Neither he nor the investigator testified that Mother's home or the child's living conditions were unstable or unsafe. Thus, the family court did not abuse its discretion in concluding that the private investigator's testimony was not relevant to whether a modification of the "no contact" order was warranted. *See* Syl. Pt. 4, *State v. Rodoussakis,* 204 W. Va. 58, 511 S.E.2d 469 (1998) ("A trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard.").

Next, Father argues that the family court's order denying his petition for modification effectively terminated his parental rights without affording him due process of law. *See* Syl. Pt. 1, *In re Willis*, 157 W. Va. 225, 207 S.E.2d 129 (1973) ("In the law concerning custody of minor children, no rule is more firmly established than that the right of a natural parent to the custody of his or her infant child is paramount to that of any other person; it is a fundamental personal liberty protected and guaranteed by the Due Process Clauses of the West Virginia and United States Constitutions."). He contends that he has never been determined to be an abusive or unfit parent and that the court erred in failing to impose a less restrictive remedy such as supervised visitation.

As previously discussed, any type of modification of the "no contact" order required that Father establish that there has been a substantial change in circumstances and that modification is necessary to serve the child's best interests. *See Skidmore*, 229 W. Va. at 15, 725 S.E.2d. at 184, syl. pt. 3. In matters such as the one before us, "the welfare of the child is the polar star by which the discretion of the court will be guided." Syl. Pt. 1, in part, *Lively,* 155 W. Va. at 801, 187 S.E.2d at 602 (citation omitted). We have concluded that the family court did not abuse its discretion in determining that, at the time of the March 29, 2018, hearing, Father failed to present evidence demonstrating that modification would serve the child's best interests. Under an abuse of discretion standard, "we will not disturb a . . . court's decision unless the . . . court makes a clear error of judgment or exceeds the bound of permissible choices in the circumstances." *Wells v. Key Commc'ns, L.L.C.,* 226 W. Va. 547, 551, 703 S.E.2d 518, 522 (2010) (citation omitted). *See State*

6

*v. Taylor,* 215 W. Va. 74, 83, 593 S.E.2d 645, 654 (2004) ("Under abuse of discretion review, we do not substitute our judgment for the circuit court's.") (Citing *Burdette v. Maust Coal & Coke Corp.,* 159 W.Va. 335, 342, 222 S.E.2d 293, 297 (1976)).[7]

In his next assignment of error, Father argues that, even though he filed a petition for modification of the "no contact" order, the "no contact" provision in the July 29, 2014, family court order is, in fact, no longer in effect. He argues that the order provided that "this [c]ourt will allow [Father] NO contact with the child while the outstanding action in Texas continues . . . ." According to Father, the "no contact" restriction was only to last as long as the Texas case was pending, and, once the Texas action was dismissed in 2015, the "no contact" restriction was no longer in effect and there was no need to modify it.

Father's interpretation of the family court's July 29, 2014, order is seriously flawed. The order more fully stated as follows:

> This [c]ourt is concerned that there is still an outstanding [c]ourt action in Texas which includes in its file an Order for Custody of the child in that state.

> This [c]ourt will allow [Father] NO contact with the child while the outstanding action in Texas continues since he is a flight risk with the child.

> That after the resolution of the Texas case, this matter can be set for an evidentiary hearing on [p]arenting time for [Father] with [the child].

Under the plain language of the order, the "no contact" restriction did not automatically expire upon dismissal of the Texas case nor did the dismissal automatically reinstate the shared (50/50) parenting agreement or other parenting time. Clearly, under the July 29, 2014, order, once the Texas case was dismissed, Father was required to request a modification of the "no contact" order so that a hearing could be conducted "on [p]arenting time for [Father] with [the child]." Thus, Father proceeded correctly in filing a petition for modification and his assignment of error that he was not required to do so is without merit.

Father's final assignment of error concerns the family court's finding that Father remains a "flight risk." According to its July 29, 2014, order, "[t]his [c]ourt is concerned that there is still an outstanding [c]ourt action in Texas which includes in its file an Order for Custody of the child in that state. This [c]ourt will allow [Father] NO contact with the child while the outstanding action

---

[7] We are mindful that Father has expended considerable time, effort, and resources in order to garner parenting time with his child, including relocating from Texas to West Virginia with an older son despite not having steady employment or a support system of family and friends. He has not been determined to be an unfit parent and his parental rights have not been terminated. In the future, should he seek to modify the "no contact" order, he is not foreclosed from doing so, keeping in mind that he would still be required to establish a substantial change in circumstances and that modification is necessary to serve the child's best interests, pursuant to West Virginia Code §§ 48-9-401(a) and -102(a). *See Skidmore*, 229 W. Va. at 15, 725 S.E.2d at 184, syl. pt. 3.

in Texas continues since he is a flight risk with the child." The family court further found that Father "provided no convincing evidence on today's date that he was no longer a flight risk." Father argues that the finding that he remains a "flight risk" is not based upon any evidence or argument presented below. Rather, Father argues, the basis for finding that he was a "flight risk" in the first place no longer exists because Father dismissed the Texas case in 2015. Thus, Father argues, the family court erred in finding that he continues to be a "flight risk." We find no error.

The evidence supports the family court's finding that Father remains a "flight risk." Father testified that he was uncertain whether he would be able to maintain his lease in West Virginia after June 2018 and admitted that he had not obtained a West Virginia driver's license and that he used a Texas address as a contact address for family court purposes. Further, in his petition for modification and his pleadings filed with this Court, Father repeatedly denies that he fled to Texas with the child without Mother's consent. Given these facts, we do not find that the family court abused its discretion in finding that Father remains a "flight risk."

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:**  September 9, 2019

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison

8